UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:11-CR-165 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| BRENT EDWARD LOVETT, | |
| Defendant(s). | |

Presently before the court is petitioner Brent Lovett's motion to vacate, amend, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 305). The government filed a response (ECF No. 307), to which petitioner replied (ECF No. 308).

**I.  Background**

*i.  Factual summary*

Evidence presented at trial supports the following factual summary.

Petitioner formed a number of business entities, among them Bay Resorts, Building the American Dream, Project Consultants, Coke Horse, and Coke Maggie. Petitioner's step-father, Paul Hummer, served as the president of these companies, and was responsible for signing certain paperwork, including loan documents and payroll checks. However, even though Hummer was nominally named as president, petitioner "was in charge of everything."

Petitioner also formed a company called Equity Resource, for which petitioner listed his sister, Lori Lovett, as president. Ms. Lovett believed that Equity Resource was "a holdings company of [petitioner's] real estate." Again, although Ms. Lovett was nominally named as president, petitioner effectively controlled the company.

In August of 2004, Bay Resorts leased a building at 2400 North Tenaya Way in Las Vegas, Nevada ("the Tenaya building"). Rent was $40,000 per month. Bay Resorts stopped paying rent, and the owner began eviction proceedings. During litigation related to these proceedings, petitioner offered to purchase the building from the owner. On June 9, 2006, the owner agreed to sell the building to petitioner for $6 million. Ms. Lovett signed documents to assist her brother with a loan for the purchase of the Tenaya building.

Petitioner coordinated the Tenaya building purchase as a "double escrow" transaction, whereby Bay Resorts would purchase the property and immediately re-convey it to Equity Resource for $10 million. Petitioner reached out to Lockheed Federal Credit Union ("Lockheed") for a loan to finance the Equity Resource purchase.

As a part of the loan request, petitioner made a number of false representations and omissions. Petitioner created false Equity Resource tax returns, representing assets of over $60 million. Petitioner created a counterfeit bank statement representing that Equity Resource had $3.3 million dollars in an account that actually contained $2. Petitioner represented that Equity Resource would fund $2.6 million of the $10 million purchase price. Petitioner failed to disclose the double-escrow nature of the transaction. Finally, petitioner failed to disclose the $1.3 million kickback that Bay Resorts would receive as a result of the $7.5 million loan to Equity Resource. A Lockheed representative stated at trial that Lockheed would not have approved the loan to Equity Resource if it had knowledge of these false representations and omissions.

Lockheed approved Equity Resource's $7.5 million loan request based on the inaccurate and incomplete loan application. On August 9, 2006, Bay Resorts purchased the Tenaya building for $6 million and immediately re-conveyed it to Equity Resource for $10 million. This re-conveyance ostensibly netted Bay Resorts close to $4 million in sale profits,[1] including approximately $1.3 million in remaining proceeds from the Equity Resource loan.

After Equity Resource defaulted on the loan, Lockheed foreclosed on the Tenaya building. The foreclosure netted approximately $2 million, which resulted in a total loss amount of approximately $5 million. This was "the largest single loss in [Lockheed] history."

---

[1] Bay Resorts did not in fact receive $2.6 million from Equity Resource.

*i. Procedural history*

On April 27, 2011, the government filed an indictment charging petitioner with one count of bank fraud. Trial began on February 13, 2013. On the first day of trial, petitioner moved to represent himself. The court[2] canvassed the parties regarding the propriety of the request, during which defendant's counsel stated that he had "done [his] best to get up to speed and believe[d] that [he was] up to speed" and was "ready for trial." Petitioner thereafter stated that he was "not asking for any extensions or anything, I'm ready to proceed." The court granted petitioner's request to represent himself.

After seven days of trial, the jury convicted petitioner of bank fraud. The court sentenced petitioner to 98 months' imprisonment and ordered restitution in the amount of $4,889,134.

Petitioner appealed his conviction to the Ninth Circuit. The court appointed counsel for petitioner, and denied petitioner's request to terminate appointed counsel. The court also did not accept petitioner's *pro se* brief. On August 8, 2016, the Ninth Circuit affirmed petitioner's conviction and sentence.[3]

## II. Legal Standard

Federal prisoners "may move . . . to vacate, set aside or correct [their] sentence" if the court imposed the sentence "in violation of the Constitution or laws of the United States . . . ." 28 U.S.C. § 2255(a). Section 2255 relief should be granted only where "a fundamental defect" caused "a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 345 (1974); *see also Hill v. United States*, 368 U.S. 424, 428 (1962).

Limitations on § 2255 motions are based on the fact that the movant "already has had a fair opportunity to present his federal claims to a federal forum," whether or not he took advantage of the opportunity. *United States v. Frady*, 456 U.S. 152, 164 (1982). Section 2255 "is not designed to provide criminal defendants multiple opportunities to challenge their sentence." *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993).

---

[2] Prior to April 9, 2017, the Honorable Roger L. Hunt presided over this case.

[3] Petitioner filed a writ of certiorari to the Supreme Court of the United States, which was denied on April 3, 2017.

## III. Discussion

### a. The successive claim rule

"When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as a basis for a subsequent § 2255 petition." *United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000) (citing *United States v. Redd*, 759 F.2d 699, 700-01 (9th Cir. 1985)). Restating an issue by using different language does not make a previously considered claim reviewable. *United States v. Currie*, 589 F.2d 993, 995 (9th Cir. 1979).

Petitioner argues that certain comments made by government attorneys at trial were unfairly prejudicial. (ECF No. 305). Specifically, petitioner argues that prosecutors made inappropriate comments about his self-representation, and that they erroneously argued during closing that the government had proven federal jurisdiction. *Id.* at 147.

Petitioner raised both of these arguments in his direct appeal. The Ninth Circuit considered and rejected each argument. *See Lovett*, 668 Fed. App'x at 231. Therefore, petitioner is precluded from re-litigating these issues in a § 2255 motion. *See Hayes*, 231 F.3d at 1139.

### b. The procedural default rule

When a defendant fails to raise a legal argument on direct appeal, the "procedural default" rule applies to bar collateral review under § 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003). The two noted exceptions to this rule are when a defendant can show both cause and prejudice, *id.*, or "actual innocence," *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003).

To demonstrate cause, a defendant must show "that some objective factor external to the defense impeded [his] efforts to raise the [barred] claim. . . . Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel." *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (internal quotations omitted). To demonstrate prejudice, a defendant must show "a reasonably probability that his conviction or sentence would have been different." *United States v. Lopez*, 577 F.3d 1053, 1060 (9th Cir. 2009) (quoting *Stickler v. Green*, 527 U.S. 263, 296 (1999)). If defendant cannot demonstrate cause and

prejudice, he must prove "actual innocence," meaning "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Ineffective assistance of appellate counsel can constitute the cause required to establish procedural default. *Murray v. Carrier*, 477 U.S. 478, 488-92 (1986). However, "appellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal." *Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001). Appellate counsel has "no constitutional duty to raise every non frivolous issue requested by a petitioner." *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). "[W]eeding out weaker issues . . . is widely recognized as one of the hallmarks of effective appellate assistance." *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).

Here, appellate counsel raised seven claims of error on appeal.[4] Focusing on these claims was a reasonable tactical decision. *See id.* The additional claims that petitioner argues his appellate counsel should have made[5] were frivolous and would have detracted from his already-weak claims raised on appeal. Therefore, petitioner has not established cause and prejudice to excuse his procedural default. Further, petitioner's motion does not point to any evidence suggesting that he has a viable claim of actual innocence. Accordingly, all of petitioner's claims that he did not raise at the appellate level are barred. *See Massaro*, 538 U.S. at 504.

*c. Ineffective assistance of counsel*

To prevail on a claim of ineffective assistance of counsel, a movant must show deficient performance and prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

---

[4] (1) The district court erred when it did not require proof necessary to establish that LFCU was federally insured at the time of the loan application; (2) the prosecutor's disparaging comments regarding Lovett's invocation of his Sixth Amendment right to choice of counsel through self-representation constitutes reversible error; (3) failure to remove the vicarious liability instruction constructively amended the indictment; (4) due process precluded use of the vicarious liability instruction because conspiracy was not charged and the alleged relationship between the "co-schemers" and the offense was slight, (5) failure to remove vicarious liability instruction reduced the government's burden of proof in violation of defendant's due process rights, (6) cumulative error denied defendant a fair trial, (7) the district court erred in fixing the amount of restitution because it was not based upon this court's mandated valuation methodology for mortgage fraud cases.

[5] The court discusses these claims in more detail in discussion section (c)(ii).

James C. Mahan
U.S. District Judge

| | |
|---|---|
| 1 | "First, the defendant must show that counsel's performance was deficient." *Id.* at 687. |
| 2 | "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "A fair |
| 3 | assessment of attorney performance requires that every effort be made to eliminate the distorting |
| 4 | effects of hindsight . . . ." *Id.* at 689. "[A] court must indulge a strong presumption that counsel's |
| 5 | conduct falls within the wide range of reasonable professional assistance; that is, the defendant |
| 6 | must overcome the presumption that, under the circumstances, the challenged action might be |
| 7 | considered sound trial strategy." *Id.* at 689. To establish deficient performance, the petitioner |
| 8 | "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* |
| 9 | at 688. |
| 10 | "Second, the defendant must show that the deficient performance prejudiced the defense. |
| 11 | This requires showing that counsel's errors were so serious as to deprive the defendant of a fair |
| 12 | trial, a trial whose result is reliable." *Id.* at 687. "The defendant must show that there is a |
| 13 | reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding |
| 14 | would have been different. A reasonable probability is a probability sufficient to undermine the |
| 15 | confidence in the outcome." *Id.* at 694. |
| 16 | "When an accused manages his own defense, he relinquishes, as a purely factual matter, |
| 17 | may of the traditional benefits associated with the right to counsel." *Faretta v. California*, 422 |
| 18 | U.S. 806, 835 (1975). "For this reason, in order to represent himself, the accused must 'knowingly |
| 19 | and intelligently' forgo those relinquished benefits." *Id.* "In order to deem a defendant's *Faretta* |
| 20 | waiver knowing and intelligent, the district court must ensure that he understands 1) the nature of |
| 21 | the charges against him; 2) the possible penalties; and 3) the dangers and disadvantages of self- |
| 22 | representation." *United States v. Erskine*, 355 F.3d 1161, 1167 (9th Cir. 2004) (internal citation |
| 23 | and quotation omitted). "[A] defendant who elects to represent himself cannot thereafter |
| 24 | complaint that the quality of his own defense amounted to a denial of 'effective assistance of |
| 25 | counsel.'" *Faretta*, 422 U.S. at 834 n.46. |
| 26 | . . . |
| 27 | . . . |
| 28 | . . . |

**James C. Mahan**
**U.S. District Judge**

### i. Ineffective assistance of pretrial counsel[6]

Petitioner alleges that appointed counsel failed to investigate his case, failed to confer with him, and failed to advise him of his rights. *See* (ECF No. 305 at 148). The government asserts that these conclusory statements are contradicted by the trial record in this case and that petitioner fails to provide any evidence of prejudice. (ECF No. 307).

Here, the court conducted an extensive *Faretta* hearing[7] with the defendant prior to granting his motion to proceed *pro se*. (ECF No. 119). The following is an excerpt from the minutes of the hearing that concisely summarizes the proceedings,

> The Court explain[ed] the duties and obligations of counsel and inquire[d] what the [petitioner] believe[d] should or should not have been done by his attorneys. [Petitioner] respond[ed], followed by counsel's representations. The Court [found] that appointed counsel provided proper representation and that no other attorney would or could do differently. Therefore, the Court [found] that appointing new counsel would not eliminate any of [petitioner's] complaints. . . . [T]he Court reiterate[d] the dangers and possible consequences of self-representation and *strongly* urge[d] [petitioner] to reconsider.

*Id.* (emphasis in original); *see also* (ECF No. 129) ("*The Court again strongly urges the Defendant to reconsider his decision to represent himself.*") (emphasis in original). After a tortured back-and-forth between petitioner, multiple attorneys, and the court that lasted five months, petitioner ultimately opted to represent himself *pro se*.[8] (ECF No. 188). Accordingly, the trial court record in this case demonstrates that petitioner was adequately advised of his rights and made an informed decision to represent himself *pro se*.

---

[6] Although the court holds that petitioner procedurally defaulted on this claim, the court will address it given the constitutional implications of an ineffective assistance of counsel claim. *See Sunal v. Large*, 332 U.S. 174, 178 (1947) (holding that a defendant cannot attack a judgment through a habeas corpus proceeding on grounds that could have been raised at the trial level, "at least where the error does not trench on any constitutional rights of defendants nor involve the jurisdiction of the trial court.").

[7] The referenced hearing was actually two hearings conducted on the same day (September 7, 2012). *See* (ECF No. 119). The *Faretta* canvassing took approximately 45 minutes.

[8] *See* (ECF Nos. 119, 129, 137, 142, 152, 154, 185, 188). This lengthy back-and-forth demonstrates that petitioner's argument that he was "denied his equal protection, Due Process and Sixth Amendments rights by the refusal by the court, to appointment of new counsel due to being too poor" mischaracterizes the course of proceedings.

Further, the trial court record demonstrates that petitioner's pretrial counsel conducted an adequate investigation in his case. The district court reviewed the investigator's reports in this case *in camera* to decide whether "it is necessary for [petitioner] to travel for interviews." (ECF No. 119). The court held that it was unnecessary for petitioner to travel to conduct interviews because the "investigator's reports and statements [were] sufficient." *Id.*

To the extent that petitioner claims that his self-representation constituted ineffective assistance of counsel, this argument is foreclosed by *Faretta*. *See* 422 U.S. 806, 834 n.46 ("a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'").

The court holds that petitioner's motion does not reference any evidence that could support a finding of prejudice in this case. As petitioner is required under *Strickland* to demonstrate that counsel's deficient performance prejudiced petitioner in order to prevail on an ineffective assistance of counsel claim, the court will deny petitioner's motion to the extent that it relies on allegedly ineffective assistance of pretrial counsel.

### ii. Ineffective assistance of appellate counsel

Petitioner argues that he received ineffective assistance of counsel on appeal. (ECF No. 305). As the court noted previously, appellate counsel raised numerous issues on appeal. Petitioner highlights six primary points of error that he believes appellate counsel should have raised on appeal: (1) numerous allegations of improper interference by the court during the course of the trial; (2) improper waiver of attorney representation at trial; (3) government witnesses making false statements to the grand jury; (4) discovery violations; (5) erroneous admission of evidence; and (6) a speedy trial claim.

Petitioner points to the fact that the court sustained all of the government's objections and overruled all of petitioner's objections.[9] However, all of the government's objections were legitimate, and petitioner's objections lacked a basis in law.[10] Further, petitioner's citations to

---

[9] Petitioner alleges that the government lodged 57 objections, whereas petitioner lodged 13.

[10] This is not surprising, given that petitioner chose to represent himself *pro se*.

comments made by Judge Hunt during the trial do not demonstrate bias or animosity towards petitioner. Therefore, petitioner's allegations of improper interference by the court during the course of trial and erroneous admission of evidence lack merit, and the choice to withhold these arguments from an appellate brief fell within a constitutionally reasonable range of reasonable representation. *See Strickland*, 466 U.S. at 688.

Petitioner argues that he was denied the right to represent himself. (ECF No. 305). In the alternative, petitioner argues that he did not want to represent himself but that he was forced to because none of his court-appointed attorneys "interviewed a single witness, reviewed the evidence, filed a substantial motion or in any way prepared the case for trial." *Id.* As the court noted previously, both of these arguments are without merit. Petitioner cannot claim that he was denied the right to represent himself because the court ultimately allowed him to represent himself at trial. Further, the court conducted numerous hearings on the topic and repeatedly informed petitioner of the dangers of self-representation. Furthermore, petitioner's bald claims that his court-appointed attorneys did nothing to prepare for trial is belied by the record. Appellate counsel's decision not to raise a meritless argument regarding denial of petitioner's right to self-representation was a reasonable decision under the circumstances. *See Strickland*, 466 U.S. at 688.

Petitioner asserts that counsel should have argued on appeal that a government witness made false statements to the grand jury. The district court considered and rejected this argument at trial, noting that petitioner often mischaracterized the veracity of the witness's statements and did "not present any evidence in [his] motion of any statement that was made intentionally, [or] any wrong statement was intentionally wrong." (ECF No. 266). "[H]is allegations come nowhere near the sufficient misconduct that would violate [his] due process or justify the Court in dismissing the case." *Id.* Appellate counsel wisely chose not to re-raise this argument on appeal. *See Strickland*, 466 U.S. at 688.

Petitioner alleges that prosecutors failed to disclose evidence prior to trial. (ECF No. 305). As the government notes, petitioner's motion does not provide facts to adequately support his

assertion.[11] Further, the district court considered and rejected petitioner's argument. (ECF No. 278 ("there [have] been no violations of any obligations to supply you with discovery.")). Appellant counsel's decision to not raise this argument on appeal was reasonable. *See Strickland*, 466 U.S. at 688.

Petitioner argues that appellate counsel should have raised a speedy trial claim. (ECF No. 305). Petitioner waived his speedy trial right by requesting multiple pre-trial continuances. *See United States v. Lam*, 251 F.3d 852 856-57 (9th Cir. 2001) (holding that no Sixth Amendment speedy trial violation occurred when a defense attorney sought continuances for the purpose of trial preparation). Therefore, appellate counsel properly chose to refrain from making this frivolous argument on appeal. *See Strickland*, 466 U.S. at 688.

Petitioner also cites appellate counsel's delay in filing petitioner's opening brief on appeal. (ECF No. 305). Petitioner's motion fails to place this delay into context. The appellate counsel who filed petitioner's brief was appointed after initial appellate counsel was removed for what the court held was an excusable failure to file an opening brief with the Ninth Circuit. *See* Appellate Dkt. No. 56. Further, petitioner swamped both appellate counsel and the court with numerous motions, requests for rehearing, and similar filings in an attempt to represent himself *pro se*. In context, appellant counsel's requests for extension and ultimate brief fell within the range of constitutionally adequate representation. *See Strickland*, 466 U.S. at 688.

Here, petitioner has not established that appellate counsel provided constitutionally deficient performance. *See id.* The choice to refrain from raising frivolous arguments on appeal was a "reasonable tactical choice based on an adequate inquiry [and] is [therefore] immune from attack under *Strickland*." *Gerlaugh v. Stewart*, 129 F.3d 1027, 1033 (9th Cir. 1997).

   *d. Whether cumulative error provides a basis to grant petitioner's motion*

Petitioner claims that the sheer number of cumulative errors in this case amount to a constitutional violation. As the Ninth Circuit stated on defendant's direct appeal: "where, as here, 'there is no single constitutional error in [the] case, there is nothing to accumulate to the level of a

---

[11] The government contends that some of the "evidence" that petitioner points to does not exist. (ECF No. 307). The government further contends that petitioner has failed to demonstrate that any evidence that did in fact exist was not given to petitioner prior to trial. *Id.*

constitutional violation,' and a defendant's allegation that the cumulative effect of errors prejudiced his right to a fair trial fails." *United States v. Lovett*, 668 Fed. App'x 230 (9th Cir. Aug. 8, 2016) (alteration in original) (quoting *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002) (citing Fuller v. Roe, 182 F.3d 699, 704 (9th Cir. 1999))).

   *e. Certificate of appealability*

The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)
>
> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253.

Under § 2253, the court may issue a certificate of appealability only when a movant makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a

substantial showing, the movant must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted).

The court holds that petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find the court's determination that movant is not entitled to relief under § 2255 debatable, wrong, or deserving of encouragement to proceed further. *See id.* Accordingly, the court declines to issue a certificate of appealability.

**f. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that petitioner's motion to vacate, amend, or correct (ECF No. 305) be, and the same hereby is, DENIED.

DATED July 10, 2018.

                                                     _____
                                                     UNITED STATES DISTRICT JUDGE